## Tax Review Board v. Holmes & Co.

*L. J. D. Giacomo*, of Zoob & Matz, for appellant.

*L. Prattis* and *D. Berger*, for tax review board.

HAGAN, J., December 31, 1957.—This matter is before us on a taxpayer's appeal from a decision of the tax review board.

The taxpayer contends that it is either a "factor or commission merchant" or a "commodity broker" within the meaning of those terms as employed in the Mercantile License Tax Ordinance. If the taxpayer is correct in its contention, then it was taxed improperly. If, on the other hand, it is incorrect in its contention, then it was taxed properly.

A "factor or commission merchant" is defined in section 508(*a*) of the regulations promulgated under the Mercantile License Tax Ordinance as "an *agent* employed to sell goods or merchandise consigned or delivered to him, by or for his principal, for a consideration, commonly called factorage or commission." (Italics supplied). The primary requisite, therefore, of a "factor or commission merchant" under the definition contained in the regulations, as well as under the commonly accepted use of the term, is that he be an agent. The board specifically found that the taxpayer, in conducting the operation of that portion of its business here in question, is a principal and not an agent, and

for this reason it refused to permit the taxpayer to be taxed as a "factor or commission merchant". We are determining this matter upon the record made before the tax review board, and the issue before us, therefore, is whether or not that record supports the board's finding that the taxpayer is a principal and not an agent. See Pa. R. C. P. 8.

A review of the record reveals the following pertinent facts:

1. The taxpayer acts on behalf of six mills and is given an exclusive territory by the mills.

2. The taxpayer has no written contract with the mills. The exact terms under which the taxpayer operates, therefore, are difficult to ascertain.

3. The mills ship directly to the taxpayer's customers.

4. The mills bill the taxpayer, less a 2 percent discount for payment within 10 days; whereas the taxpayer bills its customers less 2 percent for payment within 30 days.

5. The taxpayer does not always sell to its customers at the same price the mill bills the taxpayer. Where the customer has bad credit, the taxpayer, because it assumes the risk of loss, may charge more, and sometimes, where competition requires it, the taxpayer may charge less.

6. Although the taxpayer keeps what it terms a "commission" account, it also keeps "purchase" and "sales" accounts, which are clearly inconsistent with a commission.

7. While the testimony is in doubt as to whether the taxpayer or the mill assumes the risk of loss of merchandise, the board would have been justified in concluding that the taxpayer assumed such risk, in light of testimony on behalf of the taxpayer that on one occasion five bales went astray in a shipment from a mill and the taxpayer reimbursed the mill therefor.

8. The taxpayer guarantees payment to the mill, if its customer does not pay. Furthermore, it appears that the taxpayer is liable to the mill in the event that its customer refuses to accept the merchandise.

In light of all of the above mentioned testimony in the record, it is clear that there are sufficient indicia that the taxpayer acted as a principal rather than as an agent to sustain the board's finding, and we therefore hold that the board did not err in this respect.

We shall next consider the taxpayer's contention that it is a "commodity broker" within the meaning of that term as employed in section 504(a) of the regulations promulgated under the Mercantile License Tax Ordinance. Nowhere in the Mercantile License Tax Ordinance or in the regulations is the term "commodity broker" defined. However, in the case of Brown & Zortman Machinery Company v. Pittsburgh, 375 Pa. 250, a case very similar to this, it was stated, at page 254, that: "Agency is one of the chief characteristics of a broker. . . ." We hold that the board did not err in finding that the taxpayer is not a "commodity broker", since, as we have already pointed out, there was sufficient evidence in the record to support the board's finding that the taxpayer is a principal and not an agent.

The taxpayer's final contention is that, if it is not taxed as a commodity broker, the result is an unreasonable classification, in that its method of doing business is very similar to that of a commodity broker. The law in Pennsylvania is that a tax ordinance may either be levied upon or exempt any well-defined business or industry without violating the constitutional provisions as to uniformity. Thus, the following classifications have been held to be reasonable: Wholesale vendors as distinguished from retail vendors (Knisely v. Cotterel, 196 Pa. 614) ; anthracite coal dealers as distinguished from bituminous coal dealers (Heisler v. Thomas Col-

liery Co., 274 Pa. 448, and Commonwealth v. Hudson Coal Co., 287 Pa. 64) ; stock life insurance companies as distinguished from mutual life insurance companies (Commonwealth v. Girard Life Insurance Co., 305 Pa. 558) ; and outdoor parking lots as distinguished from indoor parking lots: Philadelphia v. Samuels, 338 Pa. 321. In light of these holdings, we do not believe that the taxpayer has sustained his contention as to unreasonable classification.

For the foregoing reasons, the appeal of Holmes & Company is hereby dismissed, and the decision of the tax review board is affirmed.