426 A.2d 1118

ALDINE APARTMENTS, INC., t/a Academy
Apartments, Appellant,

v.

COMMONWEALTH of Pennsylvania.

Supreme Court of Pennsylvania.

Argued Jan. 22, 1981.

Decided March 13, 1981.

Robert R. Guzzardi, Philadelphia, for appellant.

Paul S. Roeder, Deputy Atty. Gen., for appellee.

Barton A. Hertzbach and Frank E. Hahn, Philadelphia, for Delaware Valley House Owners' Association.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, and KAUFFMAN, JJ.

## OPINION

NIX, Justice.

This is an appeal by a taxpayer, Aldine Apartments, Inc. (appellant), from an order of the Commonwealth Court[1] affirming the decision of the Pennsylvania Board of Finance and Revenue sustaining the Sales Tax Board of Review in denying appellant's petition for refund of $4,685.58 in sales tax paid on purchases of electricity, gas and fuel oil. The basic issues raised are the tax implications resulting from

1. *Aldine Apartments, Inc. v. Commonwealth*, 39 Pa.Cmwlth. 204, 395 A.2d 299 (1978).

the purchases of utilities made by appellant for the residential use of its tenants and the constitutional propriety of those provisions of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, No. 2, art. I, § 101 *et seq., as amended*; 72 P.S. § 7101 *et seq.* (Supp.1980–81).

In this case a sales tax was paid on purchases of electricity from the Philadelphia Electric Company; gas from the Philadelphia Gas Works; and fuel oil from National Heat & Power Company. All electricity, gas and fuel oil were purchased by appellant for use in operating its apartment complex. The residential tenants of appellant paid a monthly rental which included possession of apartments with utilities provided. The appellant's argument reduced to its essence is that because the ultimate use is for residential purposes, it should be exempt from taxation although not purchased directly by the user.

The provisions of the Code pertinent to this inquiry are § 202(a) and 201(m), 72 P.S. § 7202(a) and § 7201(m). Section 202(a) provides:

There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

Section 201(m) defines "tangible personal property" as:

Corporeal personal property including, but not limited to, . . . steam and natural and manufactured and bottled gas for non-residential use, electricity for non-residential use, . . . . Nor shall said term include steam, natural and manufactured and bottled gas, fuel oil, electricity *when purchased directly by the user thereof solely for his own residential use.* [Emphasis added.]

■ The argument that the ultimate residential use sustains the right to exemption is defeated by the clear language of the Act. The legislature could not have been more explicit in section 201(m) in confining the residential use exception to residential use by the purchaser. This intention

becomes even clearer when consideration is given to the fact that the provision prior to amendment simply stated "when purchased solely for residential use." [2]

Appellant seeks to place itself in the role of a mere conduit and suggests that factor is not deserving of any tax consequences. However, it is clear that the legislature intended to distinguish between purchases by those who intended to use the utility for their own residential use and those who purchased the tangible personal property for a commercial purpose. The fact that appellant is in the business of supplying residences for hire does not make it any less a commercial venture.

■ Aldine argues that under the first sentence of section 201(m) "steam and natural and manufactured . . . gas" and "electricity" are classified as tangible personal property *only where it is purchased for a nonresidential use.* That first sentence of section 201(m) is not qualified by the use of the phrase "purchased directly by the user thereof." Thus appellant reasons that where gas and electricity are used for residential use, it is not corporeal personal property under section 201(m) and that the second sentence of the section is of no moment. We cannot accept such a strained interpretation of the clear language of the section. Section 201(m) reveals an obvious legislative intent to distinguish based upon the use to which the purchaser of the property makes of the item as opposed to the ultimate use of the item itself. To accept the suggested construction would render the second sentence of section 201(m) meaningless insofar as it relates to gas and electricity, although these items were expressly referred to in that sentence. This approach would be offensive to the fundamental principle of statutory construction that all provisions of a statute are to be given meaning. 1 Pa.C.S.A. § 1921(a) (Supp. Pamphlet 1964–79).

Appellant in the alternative argues that the Department of Revenue has not been empowered to impose, levy and collect sales taxes on purchases of steam, electricity and

2. The phrase "directly by the user thereof" was added in the first amendment. Act of August 31, 1971, P.L. 362, No. 93, § 1.

natural gas which are purchased for resale. This argument rests upon the fact that section 202(a) provides for the imposition of the tax only on *sales at retail.* The issue raised by this contention is whether the fact that Aldine passes on to the tenants through the rental payments the cost of these items constitutes a resale by Aldine of these items to the tenant.

■ Upon scrutiny we find Aldine's position to be fallacious. In providing these items the landlord is furnishing a complete rental unit and is not selling any particular item therein. The provisions of these utilities for the rental price is part of the inducement to the tenant to enter the lease for the unit. The tenant does not obtain any more ownership in these utilities than it does in the bathroom or kitchen facilities that may be supplied with the unit. All of these items are supplied for the use of the tenant during the term of the lease.

Appellant relies upon our decision in *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974) to argue that the rental of real property is a sale as a matter of law. The holding of *Monumental Properties* is clearly not supportive of the argument in this context. The fact that in *Monumental Properties* we held, for strong policy reasons, that the leasing of residences falls within the ambit of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, §§ 1–9, 73 P.S. §§ 201–1 to 201–9 (1971) does not require us to ignore the traditionally accepted differences between a sale and a lease in interpreting the instant statute.

Even if we were to accept that the rental of the unit was a sale under the Act, there was no sale or lease of these specific items to the tenant, but rather a rental of the entire unit.[3] What appellant refuses to acknowledge is that it

3. Appellant admits that it did not render an exemption certificate to any of its suppliers on the purchases of these items, Tax Reform Code of 1971, Act of March 4, 1971, P.L. 31, No. 2, art. II § 237(c), *as amended,* 72 P.S. § 7237(c) (Supp.1980–81); nor did it have a license to collect sales tax, Tax Reform Code, Act of March 4, 1971, P.L. 25,

purchased the items in question not for residential use but rather in furtherance of its commercial venture and integrated them in the package it offered to prospective tenants. The purchases were not for the residential use of the buyer but rather to further Aldine's commercial interest in renting these units. Moreover, Aldine's product for resale was the use and enjoyment of the residential unit for a stated period of time under specified terms and conditions. There was no sale of the independent components that actually comprised the rental units.

Finally, appellant and Delaware Valley Apartment House Owners' Association (D.V.A.H.O.A.), who was allowed to participate as *amicus curiae*, argue the statute as we construe it would be offensive to the Pennsylvania and United States Constitutions.

■ Specifically, appellant asserts that section 201(m) violates the Uniformity Clause of the Pennsylvania Constitution[4] and the Equal Protection Clause of the United States Constitution[5] by arbitrarily and unreasonably discriminating between purchasers of certain utility services and fuel oil for residential use by others and purchasers of those items for their own residential use.[6] We do not agree.

No. 2, art. II § 209(a), *as amended*, 72 P.S. § 7209. Further, Aldine stipulated that no payments were made by the residential tenants to it for these items; and that the monthly rentals were not directly related to the amount of utility services or fuel oil used by the individual tenants.

4. The Uniformity Clause, Pa.Const. Article VIII, § 1, provides in relevant part:
   All taxes shall be uniform, upon the same class of subjects....

5. The Fourteenth Amendment of the United States Constitution provides:
   No State shall ... deny to any person within its jurisdiction the equal protection of the laws.

6. In regard to reasonableness of classifications made for purposes of taxation, the Equal Protection Clause and the Uniformity Clause stand in *pari materia*. *Commonwealth v. Life Assur. Co. of Pa.*, 419 Pa. 370, 374, 214 A.2d 209, 213 (1965); *Commonwealth v. Budd Co.*, 379 Pa. 159, 167, 108 A.2d 563, 566 (1954); *Commonwealth v. Girard Life Ins. Co.*, 305 Pa. 558, 562, 158 A. 262, 263 (1932).

■ It is a principle of longstanding that the Legislature, in the exercise of its taxing power, is subject to the requirements of the equal protection and uniformity clauses. *Alco Parking Corp. v. City of Pittsburgh*, 453 Pa. 245, 307 A.2d 851, *rev'd on other grounds*, 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974); *Commonwealth v. Life Assur. Co. of Pa., supra; Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959). However, it is equally well-established that the Legislature must necessarily possess wide discretion for purposes of taxation. *Alco Parking Corp. v. City of Pittsburgh, supra; Commonwealth v. Life Assur. Co. of Pa., supra; Dole v. City of Philadelphia*, 337 Pa. 375, 11 A.2d 163 (1940). In adjudications where the validity of classification for tax purposes is challenged on equal protection grounds, no flexible and unreasonable rule of equality is imposed. Rather the test is whether there exists "some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. . . ." *Commonwealth v. Girard Life Ins. Co.*, 305 Pa. 558, 563, 158 A. 262, 263, *affirmed Girard Life Ins. Co. v. Commonwealth*, 287 U.S. 570, 53 S.Ct. 94, 77 L.Ed. 501 (1932). We have further stated:

> So long as the classification imposed is based upon some standard capable of reasonable comprehension, be that standard based upon ability to produce revenue or some other legitimate distinction, equal protection of the law has been afforded.

> *Commonwealth v. Life Assur. Co. of Pa., supra*, 419 Pa. at 378, 214 A.2d at 215.

■ The application of these principles to section 201(m) convinces us that the distinction created by the Legislature between residential users who purchase utility services and fuel oil directly and landlords who purchase those services to provide a complete living unit to apartment dwellers does not violate the equal protection or the uniformity clause. Appellant argues that the distinction resulting from our

interpretation of section 201(m) is one between two types of residential users, i. e., users living in buildings whose utilities are master-metered and users living in buildings whose utilities are sub-metered. Our view, and certainly the one mandated by the language of section 201(m), however, is that the Legislature sought to distinguish between purchasers of utility services for their private residential use and purchasers of those services who, because of the nature of their commercial venture, choose to provide utility services to their tenants. When viewed in this light, it is manifest that the classification created by the Legislature rests upon a "reasonable and just" basis and is neither capricious nor discriminatory, thus "capable of reasonable comprehension."

The instant classification recognizes the very practical distinction between individuals buying directly for their own residential use and landlords buying in bulk to operate a commercial apartment complex. One example of this difference is that a large volume commercial purchaser receives a discount on bulk purchases of most utilities which the individual residential purchaser does not enjoy. We cannot view the landlord's role as a mere conduit or intermediary which should not have tax consequences. Rather, the landlord purchases utility services and fuel oil as part of a commercial enterprise, and it would be naive to treat it as anything other than a commercial venture.

Accordingly, the Order of the Commonwealth Court is affirmed.

LARSEN, J., filed a dissenting opinion.

LARSEN, Justice dissenting.

I dissent. The majority misconstrues the statute, ignoring the legislative mandate that taxing statutes "shall be strictly construed." Statutory Construction Act of 1972, 1 Pa.C. S.A. § 1928(b)(3) (Supp.1964–1979); *See Estate of Carlson*, 479 Pa. 421, 424, 388 A.2d 726, 728 (1978) ("A taxing statute

must not only be strictly construed, but all reasonable doubt must be resolved in favor of the taxpayer.") This principle of construction is particularly compelling in times when taxation and inflation ravage taxpayers.

The Tax Reform Code of 1971, 72 P.S. § 7202(a) imposes a six percent sales tax on retail sales of "tangible personal property", defined by 72 P.S. § 7201(m) as follows:

> (m) "Tangible personal property." Corporeal personal property including, but not limited to, goods, wares, merchandise, steam and natural and manufactured and bottled gas for non-residential use, electricity for non-residential use, intrastate telephone and telegraph service for non-residential use.... Nor shall said term include steam, natural and manufactured and bottled gas, fuel oil, electricity or intrastate telephone or telegraph service when purchased directly by the user thereof solely for his own residential use.

The taxpayer in this case, landlord of an apartment building, purchases electricity, gas, and fuel oil for the entire apartment building. The Commonwealth contends that the sales tax applies because these utilities are not purchased directly by the tenants. The Commonwealth's contention is without merit.

The utilities are put to residential use and are simply not encompassed in the definition of "tangible personal property" which includes "gas for *non-residential* use, electricity for *non-residential* use ...." (emphasis supplied). As long as the utilities are put to residential use it is irrelevant that the landlord pays for them.

The Commonwealth Court maintained that the statutory language "including *but not limited to*" (emphasis supplied) suggests a legislative intent to "exclude nothing". *Aldine Apartments, Inc. v. Commonwealth*, 39 Pa.Cmwlth. 204, 208, 395 A.2d 299, 302 (1978). The court concluded that utilities purchased by the landlord are taxable because, unlike utili-

ties purchased directly by residential users, they are not expressly excluded from the broad statutory language. This analysis is offensive to the legislative mandate that taxing statutes be strictly construed. The inclusion of property in a taxing statute must be express and cannot be inferred from a failure to exclude. *See Commonwealth v. Repplier Coal Co.*, 348 Pa. 372, 380, 35 A.2d 319, 323 (1944) ("The words imposing the tax should be clear and unambiguous . . . nor can words be extended by implication"); *Commonwealth v. Allied Building Credits, Inc.*, 385 Pa. 370, 123 A.2d 686 (1956).

The majority maintains that the last sentence of the definition which excludes utilities purchased by residential users implies a legislative intent to tax utilities purchased by a landlord. The majority erroneously infers an intent *to include* from an express intent *to exclude* a similar property. Such an inference is illogical and wholly ignores the legislative mandate of construing taxing statutes strictly.

The majority also suggests that the position advanced in this dissent would render the last sentence of the definition "meaningless" since the utilities purchased directly are not included in the definition in the first place. *See* 1 Pa.C.S.A., § 1921(a) (Supp.1964–1979) ("Every statute shall be construed, if possible, to give effect to all its provisions") The last sentence of the definition is not rendered "meaningless" but at most redundant. Further, the principle of giving effect to all statutory provisions is in direct conflict with the principle of strictly construing taxation statutes. When such conflict exists, the principle of giving effect to all statutory provisions must yield because it is stated in conditional terms—"if possible."

Accordingly, I would reverse the order of the Commonwealth Court.